PATRICK HAMMON (255047)
MATTHEW SCHECHTER (212003)
ANDREW PARKHURST (324173)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:   (408) 279-8700
Facsimile:    (408) 279-3244
Email:         phammon@mcmanislaw.com

Attorneys for Plaintiffs,
METAQUOTES LTD. and
METAQUOTES SOFTWARE CORP.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METAQUOTES LTD., a Republic of Cyprus limited corporation, and METAQUOTES SOFTWARE CORP., a Commonwealth of the Bahamas corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>METAQUOTES SOFTWARE CORP., a California corporation, STANDARD FINTECH CONSULTING, INC., a California corporation, FXCA MARKETS LIMITED, a dissolved California corporation, PEIJIE LIU, an individual, and JIAN HE, an individual, and DOES 1-20, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**1. TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114;**<br>**2. FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125;**<br>**3. FALSE ADVERTISING, 15 U.S.C. § 1125;**<br>**4. CALIFORNIA UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200 ET SEQ.;**<br>**5. UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      Plaintiffs, MetaQuotes Ltd. and MetaQuotes Software Corp., (collectively "Plaintiffs," the "Company," or the "Real MetaQuotes"), bring this Complaint to stop Defendants, MetaQuotes Software Corp. ("Counterfeit MetaQuotes"), Standard Fintech Consulting, Inc. ("Fintech"), FXCA Markets Limited ("Counterfeit FXCA") Peijie Liu ("Liu"), and Jian He ("He") (collectively "Defendants" or the "Counterfeiters"), from using Plaintiffs' trademark as part of a criminal enterprise to confuse the Real MetaQuotes customers into unintentionally paying money to the Counterfeit MetaQuotes **and** to immediately freeze the assets of Counterfeit MetaQuotes', Counterfeit FXCA, Peijie Lu, and Jian He.

2.      Masterminded by international criminal actors, the Counterfeit MetaQuotes has no legitimate business activities, let alone any justification for infringing on Plaintiffs' trademark.  The Counterfeit MetaQuotes exists for one purpose, and one purpose alone: to confuse consumers set on doing business with the Real MetaQuotes into accidentally giving their money to the Counterfeit MetaQuotes so that the Counterfeiters can line their pockets with the ill-gotten gains of their nefarious scheme.  Counterfeit MetaQuotes has caused substantial harm and may be continuing to confuse and defraud consumers.  Indeed, if Counterfeit MetaQuotes is allowed to continue, its actions will further irreparably cause harm to the Real MetaQuotes.

3.      This case is simple and straightforward.  Counterfeit MetaQuotes has no legitimate business operations and exists solely to carry out a criminal enterprise.  By this Complaint, the accompanying *ex parte* application for a temporary restraining order, and the forthcoming preliminary injunction, the Real MetaQuotes is seeking swift action to restrain Defendants and to prevent them from escaping with their ill-gotten gains.

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

## THE PARTIES

4.      Plaintiff, MetaQuotes Ltd., is an entity organized under the laws of the Republic of Cyprus.  It is incorporated in Cyprus with registration number HE 369946.  Its headquarters is located in Cyprus, a European Union member country.

5.      Plaintiff, MetaQuotes Software Corp., is an entity organized under the laws of the Commonwealth of the Bahamas.  It is incorporated in the Bahamas with registration number 116672 B.  Its headquarters is located in the Bahamas. MetaQuotes Software Corp. and MetaQuotes Ltd. share the same founding members.

6.      Defendant, MetaQuotes Software Corp., is an entity organized under the laws of the state of California with its principle place of business located at 3300 Irvine Ave, Suite 220, Newport Beach, California 92660.  The registered agent for service of process is Peijie Liu located at the same address.

7.      Defendant, Standard Fintech Consulting, Inc. ("Fintech"), is an entity organized under the laws of the state of California, with its principle place of business located at 3300 Irvine Ave, Ste 220, Newport Beach, California 92660. The registered agent for service of process is Jian He located at 1206 Dorothy Lane, Fullerton, California 92831.

8.      Defendant, FXCA Markets Limited, was an entity organized under the laws of the state of California, with its principle place of business located at 3300 Irvine Ave, Ste 220, Newport Beach, California 92660.  It filed a Certificate of Dissolution with the California Secretary of State on January 10, 2022.  The acts alleged below involving this defendant occurred prior to dissolution.  The last known registered agent for service of process is Shanfa Guo located at the same address.

9.      Defendant, Peijie Liu, is an individual residing in the state of California.

10.      Defendant, Jian He, is an individual residing in the state of California.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

11.     On information and belief, both Counterfeit MetaQuotes, Counterfeit FXCA, and Fintech are wholly owned and operated by Liu and He.

12.     Plaintiffs do not know the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

13.     Each defendant sued in this complaint acted as the agent or employee of every other defendant. Any reference in this complaint to "defendant," "defendants," or to an individually-named defendant, also refers to each and every defendant, including Does 1 through 20.

14.     On information and belief, defendants entered into a conspiracy in furtherance of the wrongful acts alleged in this Complaint.  Each defendant was aware that the other defendants planned to commit these wrongful acts. Each defendant agreed with the other defendants, and intended that these acts be committed.

15.     On information and belief, each defendant aided and abetted the other defendants in the commission of the wrongful acts alleged in this Complaint. Each defendant knew that the wrongful acts alleged in this Complaint were committed by the other defendants against plaintiff.  Each defendant gave substantial assistance and encouragement to the other defendants in furtherance of these alleged acts. Each defendant's conduct was a substantial factor in causing harm to Plaintiffs.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over the Lanham Act claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has subject

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

matter jurisdiction over the related state law claims raised in this action pursuant to 28 U.S.C. §§ 1338(b) and 1367.

17. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(b), as both Plaintiffs are residents with principle places of business outside of the United States and a subject of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) or (3). As to 28 U.S.C. § 1391(b)(1), this is the District in which one or more Defendants resides, specifically Counterfeit MetaQuotes, and all Defendants are residents of the State in which the district is located. Every Defendant is subject to the Court's personal jurisdiction with respect to this action under 28 U.S.C. § 1391(c)(2).

19. With respect to 28 U.S.C. § 1391(b)(2), a "substantial part of the events … giving rise to the claim[s] occurred" in this District given that, *inter alia*, Defendants have conducted the acts complained of in this action, including, among other things, infringing Plaintiffs' marks and engaging in acts of unfair competition, from its principle place of business in California and as a California corporation operating within the state.

20. Personal jurisdiction is proper for numerous reasons. First, Counterfeit MetaQuotes and Counterfeit FXCA are corporations registered in the State of California that have executed the tortious acts alleged in this complaint through their transactions in the state. Moreover, on information and belief, Defendants intend to continue their tortious and infringing acts through future transactions in the state. Second, on information and belief, Liu and He are officers, owners, and employees of Counterfeit MetaQuotes and Counterfeit FXCA, as well as residents in the state of California. Third, Fintech is a company registered and conducting business in the state of California and supports, aids, and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

1  abets the tortious acts carried out by the other defendants by processing

2  transactions on behalf of Counterfeit MetaQuotes from inside California.

3  **FACTUAL ALLEGATIONS**

4  **The Real MetaQuotes**

5      21.    MetaQuotes Software Corp. (the "Real MetaQuotes") is an IT

6  company established in the Bahamas in 2000.  It specializes in the design and

7  development of computer software programs with a particular emphasis on the

8  field of foreign exchange trading software ("Online Trading Software") as well as

9  other financial instruments used in connection with international financial markets.

10  MetaQuotes Software Corp. was incorporated in the Bahamas in 2000 with

11  registration number 116672 B.  It was MetaQuotes Software Corp. that developed

12  a series of entry level trading platforms in the early 2000s, and later developed

13  MetaTrader 4 ("MT4") and MetaTrader 5 ("MT5") Online Trading Platforms.

14      22.    MetaQuotes Ltd. was founded in 2017 as Finteza Ltd. and

15  incorporated in Cyprus, a European Union member country, on May 29, 2017,

16  with registration number HE 369946.  Finteza changed its name to MetaQuotes

17  Ltd. in 2019 and filed a Certificate of Change of Name with the Registrar of

18  Companies in Cyprus on July 26, 2019.  At the end of 2020, MetaQuotes Ltd.

19  acquired all intellectual property rights arising out or in connection with the

20  software and all other related intellectual property rights from MetaQuotes

21  Software Corp.  MetaQuotes Ltd. has exclusive right of marketing and distribution,

22  worldwide, of the computer software designed and developed by the MetaQuotes

23  Software Corp.   The MetaQuotes Ltd. website is located at

24  http://www.metaquotes.net.

25      23.    MetaQuotes Software Corp. is the legal entity that was used to

26  manage operations from 2000 through 2020, while MetaQuotes Ltd. is the legal

27  entity that has managed the company's operations since 2021.  Currently, all of the

28  Company's intellectual property rights are held by MetaQuotes Ltd., although

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

MetaQuotes Software Corp. still has certain licence agreements in place with customers.

24.     The Real MetaQuotes has three trademarks that have been registered in the United States with the United States Patent and Trademark Office.  They are:

a.     "MetaQuotes Software" class 09, 42: application made on May 15, 2014 (U.S. Serial No. 79150145) and registered on June 2, 2015 (U.S. Registration No. 4745695);

b.     "MetaQuotes" Class 09, 42: application was made on May 16, 2014 (U.S. Serial No. 79149674), and registered on June 9, 2015 (U.S. Registration No. 4750105); and

c.     "MetaQuotes" Class 36, 38, 41: application was made on November 14, 2019 (U.S. Serial No. 79278103) and registered on January 5, 2021 (U.S. Registration No. 6235880).

25.     The trademarks "MetaTrader," "MQL4," "MQL5," and "MetaTrader 5" have been registered with the World Intellectual Property Organization ("WIPO") and are owned by MetaQuotes Software Corp.  The following are the Company's WIPO certificates: (1) WIPO # 957372, on the commercial the "MetaTrader" label; (2) WIPO # 986555, for the mark "MQL4;" (3) WIPO # 1023842, for the mark "MQL5;" and (4) WIPO # 1045019, on the commercial mark "MetaTrader 5."

26.     The Real MetaQuotes' products and services have garnered a significant amount of goodwill in the international financial services marketplace. The Real MetaQuotes' products offer unique features with superior functionality and security in connection with the transfer of information and data.  To date, the Real MetaQuotes has transacted business with more than 2,000 brokers, and more than 10,000,000 end users use the MetaTrader Online Trading Platforms.  Millions of investors have funds with brokerages and financial institutions that rely on the Real MetaQuotes' products and services.  The Company's customers include some

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

of the world's largest banking and financial institutions, both inside and outside of the United States.

27.     The Real MetaQuotes has invested large sums of money in developing and delivering its software programs to clients.  Furthermore, the Company has expended substantial amounts of time in developing its product and service offerings.  Its product and service offerings reflect and contain the Company's twenty-two (22) years of accumulated research, investment, and know-how.  The Company has also invested a great deal of money, time, and energy in cultivating goodwill in the METAQUOTES and METAQUOTES SOFTWARE marks, which have become synonymous with the Company and its high-quality products and services.  Cumulatively, the Real MetaQuotes' efforts have helped the Company gain an international reputation as a well-regarded and quality company offering software and computer programs, which are considered some of the most reliable and secure for users in the relevant industries

28.     Among other product and service offerings, the Company is internationally recognized as the registered owner of two separate online trading platforms—MetaTrader 4 (MT4) and MetaTrader 5 (MT5).  These platforms were considered revolutionary when they were first deployed by investment firms, traders, and investors throughout the world, which gradually made the Real MetaQuotes a market leader and built the Company's reputation as an innovator in the financial trading marketplace.

29.     MT4, released in 2005, used a newly developed programming language called MQL4.  MT4 created, for the first time, the possibility for end-users to create automated trading systems and indicators, and to use them depending on their individual strategy and risk tolerances.

30.     MT5, released in 2010, is used to conduct transactions in stocks, foreign exchanges, contracts for differences ("CFD"), futures and other financial

1  instruments, and contains new functions and options based on a new version of the

2  programming language called MQL5.

3      31.    Both the MT4 and MT5 platforms are comprised of two separate

4  functions: the Server and Client Terminal.

5      32.    The Client Terminal is offered to end users and other traders without

6  any required fees, so long as they have accepted the terms of the Company's End

7  User License Agreement (the "EULA").  The Client Terminal is a user-friendly

8  program that can be downloaded and installed on a computer and allows an end

9  user or trader to, among other things, create automated trading applications.

10      33.    The Server part of the MetaTrader 4 and MetaTrader 5 online trading

11  platforms allows access to the software offered to banking institutions and

12  investment firms on the basis of a license agreement between them and the Real

13  MetaQuotes.

14      34.    Under such license agreements, the counterparties are afforded certain

15  enumerated limited rights to use the platform, having acknowledged that the

16  software platforms are the result of MetaQuotes Software Corp.'s intellectual

17  creation and protected by the Company's intellectual property rights.  In addition,

18  end-users and clients are prohibited from assigning or transferring the limited use

19  rights conferred by the EULA and the software license agreement respectively,

20  without obtaining prior written permission from the Company.  Clients are granted

21  the license to use the trading platforms for a specified period of time and may be

22  renewed.

23  **The Counterfeit MetaQuotes and Counterfeit FXCA**

24      35.    The corporate information filed with the California Secretary of State

25  for defendant, Metaquotes Software Corp., states that its address is 3300 Irvine

26  Ave, Suite 220, Newport Beach, California 92660, and lists defendant Liu as its

27  current agent for service of process at the same address.  In the original Articles of

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

Incorporation, the agent for service of process was listed as defendant He, located at 1206 Dorothy Lane, Fullerton, California 92831.

36.     The corporate information filed with the California Secretary of State for defendant, FXCA Markets Limited, states that its address is 3300 Irvine Ave, Suite 220, Newport Beach, California 92660, and lists Shanfa Guo as its current agent for service of process at the same address.  In the original Articles of Incorporation, the agent for service of process was listed as defendant He, located at 1206 Dorothy Lane, Fullerton, California 92831

37.     Starting in 2015, He began committing acts of software hacking and piracy against MetaQuotes Software Corp.'s systems in China, including, among other wrongful acts, hacking and selling pirated copies of the Company's software technology, namely the MT4 and MT5 online trading platforms.  On information and belief, He's operations were seized by Chinese police in 2017 and several of He's staff were arrested and later convicted on a wide range of criminal charges. On information and belief, He was able to evade Chinese Police capture, fled to Hong Kong and then onto the United States.  On information and belief, He is considered a fugitive and still wanted by the police in Hebei Province, China, and a warrant has been issued in China for his arrest.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

在逃人员登记表

在逃人员->详细信息

| | | | |
|---|---|---|---|
| 在逃人员编号 | T13082610000020180 11047 | | |
| 姓名 | 何健 | 曾用名/别名 号 | |
| 性别 | 男 | 出生日期 | 1983-06-05 |
| 证件 | 居民身份证号：370203198306050079 | 民族 | 汉族 |
| 其他证件 | | | |
| 身高 | 170（厘米） | 口音 | 山东省青岛市市北区 |
| 职业 | 不便分类的其他从业人员 | | |
| 户籍地址 | 山东省青岛市市南区 山东省青岛市市南区大涤一路3号1单元201户 | | |
| 现住地址 | 山东省青岛市市南区 山东省青岛市市南区大涤一路3号1单元201户 | | |
| 籍贯 | 山东省青岛市市北区 | | |
| 体貌特征 | | | |
| 体表标记 | | | |
| 案件编号 | A13082612000020170 70003 | | |
| 案件类别 | 开设赌场案 | | |
| 简要案情及附加信息 | 本宁县公安局在侦办711升级赌场案中发现，犯罪嫌疑人李鹏等人用于赌博的软件是从青岛运通网络科技有限公司购买，且定期向该公司支付维护费，经进一步侦查发现，青岛网络科技有限公司法人为莼鑫，主要管理人员有何健、张伟腾、毕倩等人。何健等人向多家公司出售赌博软件，并提供技术支持。 | | |
| 立案单位 | 河北省丰宁满族自治县公安局 | 立案单位详称 | 河北省丰宁满族自治县公安局 | 立案日期 | 2017-07-11 |
| 逃跑日期 | | 逃跑方向 | | 在逃类型 | 网内在逃 |
| 备注 | | | |
| 法律文书 | 刑拘证1页 | | |
| 通缉令 | | 通缉令级别 | | 赏金 | 500（元） |
| 主办单位分类 | 治安 | 主办单位 | 河北省丰宁满族自治县公安局 | 河北省丰宁满族自治县公安局 |
| 主办人 | 袁铁栓 | 联系方式 | 13463675645 | 主办人2 | 张仲程 |
| 联系方式2 | 18875626011 | 主办单位电话 | 0314-8018059 | 上网登记审批人 | 边超 |

| | |
|---|---|
| 入部登记库时间 | 2018-01-25 14:50:58 | 登记最后修改时间 | |

IP地址：10.57.63.22
打印时间：2018-02-07 10:19:33

(*Fugitive Person Registration Form for Mr. Jian He.*)

38.    The Real MetaQuotes is also now aware that He was the owner of a company named UGL Exchange Ltd. ("UGL"), registered in Cyprus, which was a client of the Real MetaQuotes from September 2017 to December 2020.  UGL was terminated as a client because the Real MetaQuotes became suspicious that the company was engaging in fraudulent activity and UGL's refusal to cooperate with the Real MetaQuotes to address these concerns.  He's, and his associates', time as a Real MetaQuotes client allowed them an opportunity to gain experience and knowledge into the Company's client operations, including its billing procedures,

1  invoicing and payment processes, and the use of the Company's ordering and

2  technical support websites.  The Real MetaQuotes was not aware that the Jian He

3  who served as a director of UGL was the same Jian He involved in the acts of

4  software hacking and piracy against MetaQuotes Software Corp.'s systems in

5  China until after UGL was terminated as a Real MetaQuotes client.

6       39.    Starting in or before June 2021, which was subsequent to the Real

7  MetaQuotes terminating UGL as a client, He began an undertaking to defraud

8  clients and potential clients of the Real MetaQuotes by having them transfer

9  money to He under false pretenses.  This was accomplished by registering a

10  California corporation named "MetaQuotes Software Corp.," (i.e., the Counterfeit

11  MetaQuotes) in June 2021, and another California corporation "FXCA Markets

12  Limited" (i.e., the Counterfeit FXCA), in July 2021.  FXCA Markets Limited (the

13  "Real FXCA"), though, is a company located Hong Kong engaged in the

14  international finance markets.  The California corporation registered by He with

15  same name is a counterfeit of the Real FXCA.  He also utilized another company

16  in his deception—Fintech—that was incorporated in California in August 2019

17  ("Counterfeit FinTech").  He created a fake invoice using the Counterfeit Fintech

18  name which then billed a client for MT4 and MT5 services.

19       40.    He created fake email addresses at or around the same time of June,

20  2021 with domain extensions that were meant to deceive clients into believing

21  emails that were sent by He actually originated with either the Real FXCA or the

22  Real MetaQuotes depending on who he was posing as during correspondence.

23  Examples of the fake email addresses include: "mia@fxcamarket.com,"

24  "admin@fxcamarket.com," and support@metaquotesmt5.com.

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

41.     After setting up the companies meant to impersonate the Real FXCA and the Real MetaQuotes, He, either on his own or with the help of associates in Cyprus, defrauded a Real MetaQuotes' client – the Real FXCA – by posing as a Real MetaQuotes' representative offering access to the Real MetaQuotes software platform.  After making this offer, He, or in conjunction with his associates in Cyprus, also posed as an employee of the Real FXCA to the Real MetaQuotes.  By using the fake email addresses listed above, He deceived the Real MetaQuotes into believing it had entered into an agreement with the Real FXCA.  Indeed, He signed the agreement on FXCA's behalf by posing as the company's Chief Executive Officer, Suzu Tomokazu.



**DETAILS OF THE PARTIES**

| THE LICENSEE | THE LICENSOR |
|---|---|
| **FXCA MARKETS LIMITED** | **MetaQuotes Software Corp** |
| Director: SUZU TOMOKAZU | Director: Renat Fatkhullin |
| Signature | Signature |

42.     After consummating the business relationship using false presence, the Real MetaQuotes began sending He invoices, when the Real MetaQuotes thought that the invoices were being sent directly to the Real FXCA.

43.     He then turned around and sent doctored invoices to the Real FXCA, switching back to his original role and again posing as a representative of the Real MetaQuotes.  As part of that ruse, He used the Real MetaQuotes' trademark and logo to help convince the Real FXCA that the invoices were legitimate.

44.     To summarize the scheme, the Real MetaQuotes and the Real FXCA believed they were transacting with one another, but in reality they were

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

1    transacting through He and his counterfeit entities impersonating the other parties

2    to the transaction.

3         45.    By manipulating the two companies with different sell and buy prices,

4    He was able to deceive the Real FXCA into believing that the price was almost

5    $170,000 for software access from June to December, 2021, and to send that

6    amount to bank accounts in the United States belonging to the Counterfeit

7    MetaQuotes.  In actuality, the Real MetaQuotes only charged $60,000 for the

8    license used by the Real FXCA during that time frame, an amount that was

9    transferred to the Real MetaQuotes from bank accounts in the United States

10   belonging to the Counterfeit FXCA.   He's net "profit" from this deception was

11   approximately $110,000 which was then deposited into bank accounts in the

12   United States.  The banks where He, the Counterfeit MetaQuotes, and the

13   Counterfeit FXCA had accounts were unaware of, and not involved in, He's

14   activities.

15        46.    On the fake invoices, He provided to the Real FXCA were the full

16   "MetaQuotes Software Corp." company name, logos, and the address of

17   MetaQuotes Ltd., in Cyprus.  The fraudulent invoices were sent in the same style

18   and manner that the Real MetaQuotes provides its invoices to its clients.  The

19   invoices were sent via an email address, support@metaquotesmt5.com, that was

20   meant to deceive the Real FXCA into believing the email originated with the Real

21   MetaQuotes.  He's use of the trademark name "MetaQuotes" and the "mt5"

22   addition was, on information and belief, intentionally meant to draw a false

23   association in the mind of the client with the Real MetaQuotes' popular

24   "MetaTrader 5" software program.

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    47.    On the good faith belief that the Real FXCA was the client the Real
23  MetaQuotes had entered into license agreement and invoiced, the Real MetaQuotes
24  granted a license to He for the MetaTrader 5 platform. He then forwarded the
25  required information to the Real FXCA to start using the platform in the same
26  manner the Real MetaQuotes would have done with any normal client.  From June
27  to December, 2021, He and his associates assisted the Real FXCA with the setup
28  of the MetaTrader 5 platform, including receiving questions and requests from the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

Real FXCA and passing them along to the Real MetaQuotes, who in turn would reply believing they were corresponding with the Real FXCA.  As a result of He's deception, both the Real FXCA and the Real MetaQuotes believed that they were dealing directly with one another, when in reality He was posing as both entities to maintain the ongoing deception.  A diagram of the scheme is provided below:



48.     In December 2021, the Real FXCA became suspicious following delayed responses from He to customer service requests.  The Real FXCA found the Real MetaQuotes' website and contacted the Company directly for the first time.  At this point both companies discovered He's scheme.  The Real MetaQuotes promptly began investigating He's wrongdoing and blocked He's access to the Real MetaQuotes website, access that the Company had believed was for the Real FXCA's use since June 2021.

49.     The Real MetaQuotes can only speculate as to whether this was a one-off scam—or if it was just the tip of the proverbial iceberg.  The Real MetaQuotes cannot even begin to imagine how many other companies have paid the Counterfeiters for access to its platforms.  Likewise, the Real MetaQuotes can only speculate regarding how many different potential customers it lost because the Counterfeit MetaQuotes stole its trademarks and used them in deceptive and

1  misleading emails and other correspondence aimed at persuading them to give the

2  Counterfeiters their money.

3  **The Real MetaQuotes' Trademarks**

4  50. The Real MetaQuotes owns the following trademarks registered with

5  the United States Patent and Trademark Office:

6  a. "MetaQuotes Software," Serial Number: 79149674, Registration

7  Date: June 9, 2015;

8  b. "MetaQuotes," Serial Number: 79150145, Registration Date: June 2,

9  2015; and

10  c. "MetaQuotes," Serial Number: 79278103, Registration Date: January

11  5, 2021;

12  51. On information and belief, Defendants chose the "MetaQuotes

13  Software Corp." name, used the Real MetaQuotes owned trademarks, in an attempt

14  to deceive clients into believing that the company—i.e., the Counterfeit

15  MetaQuotes—shared some affiliation with Plaintiffs, the actual owner of the

16  "MetaQuotes" and "MetaQuotes Software" trademarks.  By choosing the

17  "MetaQuotes" and "MetaQuotes Software" trademark, Defendants have, on

18  information and belief, sought to freeride off the Real MetaQuotes' goodwill with

19  clients and with the intent to use the Real MetaQuotes' trademarks to convince

20  companies to invest with Defendants only to then defraud them out of large sums

21  of money.

22  52. The Real MetaQuotes further alleges that Counterfeit MetaQuotes,

23  Counterfeit FXCA, and Counterfeit Fintech, are nothing more than front

24  organizations founded for the sole purpose of furthering He's fraudulent and

25  infringing acts.  As such, each company is the alter-ego of He or Liu, or both.  On

26  information and belief, He and Liu are the sole owners and operators of the three

27  entities, the entities have no separation or corporate formalities that distinguish

28  them from He and Liu personally, and neither company has any capital, assets, or

17

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

corporate property separate and apart from He and Liu themselves.  Any finding of liability against one Defendant should result in a finding of liability against all Defendants because there is no separateness between any person and any of the entities named in this Complaint.

53.     Plaintiffs also allege that each of the Defendants aided and abetted the other Defendants in their commission of the wrongful acts alleged in this Complaint.  Each Defendant knew that the wrongful acts alleged in this complaint were being committed by the other Defendants against Plaintiffs.  Each Defendant gave substantial assistance and encouragement to the other Defendants in furtherance of these alleged acts.  Each Defendant's conduct was a substantial factor in causing harm to Plaintiffs.

### FIRST CLAIM FOR RELIEF
**Federal Trademark Infringement**
**(15 U.S.C. § 1114)**
**Against Defendants MetaQuotes Software Corp., Jian He, and Peijie Liu**

54.     Plaintiffs' incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

55.     The Real MetaQuotes trademarks and the goodwill associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality software and services in the marketplace for online trading platform technology products.

56.     Defendants have sold, offered to sell, advertised, and held themselves out as employees or authorized agents of the Real MetaQuotes by, among other things, infringing the Plaintiffs' trademarks through direct copying and use of the "MetaQuotes" and "MetaQuotes Software" word marks and logos owned by the Real MetaQuotes.  Each instance of Defendants' use of the Real MetaQuotes' trademarks in license agreements, invoices, fake email addresses, correspondence

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

with the Real MetaQuotes' clients, in naming their business in California, and in other infringing contexts constitutes an infringement.

57.     The Real MetaQuotes asserts on information and belief that it is relevant to client decision-making and important to clients in choosing which online trading platforms to purchase that they be able to communicate resolve service issues directly with the provider.  In this case, the Real MetaQuotes' clients value the ability to work directly with the Real MetaQuotes.  Defendants' deceptive conduct in misleading both parties and injecting themselves into the middle of that relationship caused, and will continue to cause, harm to the Real MetaQuotes.

58.     Defendants' actions have caused confusion, mistake, and deception as to the origin and quality of the Real MetaQuotes' products and services because they are intentionally calculated to mislead clients into believing they are transacting with the Real MetaQuotes, when in fact they are being misled into transacting with a sham corporation impersonating and freeriding on the Real MetaQuotes' trademarks and its related goodwill.  Defendants' decision to infringe the Real MetaQuotes' trademarks was done with the goal of creating the false impression that there is an association with the Real MetaQuotes, or that the Real MetaQuotes otherwise authorized a relationship between the two entities, when in fact there is none.

59.     Upon information and belief, Defendants' infringing actions were committed fraudulently, willfully, in bad faith, with the intent to mislead, and with knowledge of the Real MetaQuotes' exclusive rights to, and goodwill in, the Real MetaQuotes trademarks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake, and/or to deceive.

60.     Defendants' unauthorized use of the Real MetaQuotes' trademarks constitutes trademark infringement of the trademarks registered with the United States Patent and Trademark Office.  Furthermore, it has caused substantial

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

damage to Plaintiffs and to the reputation and goodwill symbolized by the MetaQuotes trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, in an amount to be proven at trial.

61.     Defendants' conduct described above, including the unauthorized use of the Real MetaQuotes' trademarks in interstate commerce, has directly and proximately caused substantial, irreparable injury to the Real MetaQuotes and to the business and goodwill represented by the Real MetaQuotes' trademarks, which leaves Plaintiffs without an adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Federal False Designation of Origin
### (15 U.S.C. § 1125)
### Against Defendants MetaQuotes Software Corp., Jian He, and Peijie Liu

62.     Plaintiffs' incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

63.     Defendants' actions in impersonating the Real MetaQuotes through the unauthorized and infringing use of its trademarks is likely to cause confusion, deceive, and mislead the consuming public into believing that there was some affiliation, connection, or association between Defendants and the Real MetaQuotes.  It was also likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, authorization, approval, or affiliation of Defendants with the Real MetaQuotes, of which there is none.  Defendants' actions, including the unauthorized use of the Real MetaQuotes' trademarks in commerce, constitute false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which have caused confusion, mistake, and deception, as to Defendants' association or affiliation with the Real MetaQuotes, as well as to the origin, source, and sponsorship of the Real MetaQuotes' products and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.     Defendants' unauthorized and misleading use of the Real MetaQuotes' trademarks constitutes willful infringement in violation of 15 U.S.C.

1  § 1114(1)(b), entitling Plaintiffs to treble damages and/or enhanced statutory

2  damages under 15 U.S.C. §§ 1117(b) and (c).

3       65.    Defendants' conduct has directly and proximately caused Plaintiffs to

4  suffer damage in an amount to be proven at trial.

5       66.    Defendants' actions described above, including its unauthorized and

6  misleading use of the Real MetaQuotes' trademarks in commerce have caused

7  substantial and irreparable injury to Plaintiffs and to the business and goodwill

8  represented by the Real MetaQuotes' trademarks, thereby leaving Plaintiffs

9  without an adequate remedy at law.

10  **THIRD CLAIM FOR RELIEF**
**Federal False Advertising**

11  **(15 U.S.C. § 1125)**

12  **Against Defendants MetaQuotes Software Corp., Jian He, and Peijie Liu**

13       67.    Plaintiffs' incorporate by reference each of the allegations in the

14  preceding paragraphs of this Complaint as though fully set forth here.

15       68.    Defendants made, or caused to be made, false representations of fact

16  in commercial advertisements and correspondence with the Real MetaQuotes'

17  current and potential clients and, on information and belief, to the broader public

18  through among other things, misleading license agreements and invoices and

19  misleading email addresses that incorporated the Real MetaQuotes' company name

20  and referenced Plaintiffs' software product with the purpose of implying that

21  Defendants were affiliated or authorized by the Real MetaQuotes when in fact they

22  are not.

23       69.    The false representations made by Defendants actually deceived, and

24  had a tendency to deceive, Plaintiffs' current and potential customers by

25  convincing them to transfer money to Defendants on the mistaken belief that they

26  were dealing with Plaintiffs, and not Defendants posing as Plaintiffs.

27  ///

28  ///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.:

70.     On information and belief, the deception was material to Plaintiffs' clients in that the false representations were likely to influence their purchasing decision.

71.     Defendants caused the false representations to enter interstate commerce, namely through advertising and soliciting business from at least one company in Hong Kong from California.

72.     Plaintiffs have been, and are likely to be injured further, as a result of the false representations made by Defendants, and which, on information and belief, Defendants intend to continue making in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125.  Unless Defendants are enjoined from such further conduct, Plaintiffs will continue to suffer harm to their reputation and substantial loss of goodwill associated with its products and services.  Plaintiffs have been injured, and will continue to be injured, by Defendants false representations in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### California Unfair Competition
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)
### Against All Defendants

73.     Plaintiffs' incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

74.     The California Unfair Competition Law ("UCL"), codified in California Business and Professions Code sections 17200 *et seq.*, prohibits acts of unfair competition, which includes any unlawful business act or practice.

75.     Defendants have knowingly, willfully, and unlawfully infringed the Real MetaQuotes' trademarks, including through the unauthorized sale of the Real MetaQuotes' products and services by the use of the Real MetaQuotes' trademarks as a means to deceive, mislead, and defraud clients into purchasing from Defendants at more than three times the price charged by the Real MetaQuotes. Defendants' infringing use of the Real MetaQuotes' trademarks allowed them to

benefit off of the Company's goodwill in violation of the Lanham Act, 15 U.S.C. § 1114.

76.     As a direct, proximate, and foreseeable result of Defendants' infringing use of the Real MetaQuotes' trademarks, the Real MetaQuotes has been damaged by, among other things, injury to its reputation and creating confusion as to the Real MetaQuotes' pricing, which harms the Real MetaQuotes' ability to attract and retain new customers in a manner that harms the Real MetaQuotes' revenue.

77.     Defendants' practices were unlawful, and constitute unfair competition as defined by California Business and Professions Code sections 17200 *et seq.*  Defendants' misconduct was unlawful because, as described herein, their misconduct constitutes violations of numerous state and federal statutes, including but not limited to state false advertising laws including California Business and Professions Code section 17500, the Lanham Act (see 15 U.S.C. §§ 1114 and 1125), and other common law tortious and fraudulent acts.  Defendants conduct also constituted fraud under the meaning of the UCL in that a substantial portion of the public, including the Real MetaQuotes' current and potential clients, were likely to be misled by Defendants' false representations intended to induce them to purchase products and services from Defendants' on the mistaken belief that Defendants were affiliated in some way to the Real MetaQuotes.  Further, Defendants' alleged conduct was unfair in that their actions, as described herein, significantly threatened and/or harmed competition through infringement, and false advertising.

78.     Defendants' actions were also fraudulent under the UCL based on their false representation that they were a legitimate business looking to purchase the Real MetaQuotes' products and services, when in reality the representation was made to deceive the Real MetaQuotes into doing business with Jian He's sham front business.  The Real MetaQuotes would never have engaged in a business

transaction with Defendants but for their false representations.  Defendants' efforts to conceal the true nature of their scheme from the Real MetaQuotes, deceived the Company into believing that they were dealing with a real potential customer, the Real FXCA, when in fact the Company was transacting with one of Defendants' counterfeit businesses.  On in formation and belief, Defendants' deception was not just intentional, it was the object and purpose of the creation of the counterfeit businesses.  Plaintiffs were harmed by this fraudulent conduct.

79.   As a direct and proximate result of Defendants' unlawful and unfair business practices, Plaintiffs have lost money and property, and have suffered irreparable injury to its brand, business reputation, and goodwill.  As such, the Real MetaQuotes' remedy at law is not adequate to compensate for the injuries inflicted by Defendants.  Accordingly, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief against Defendants, in addition to restitution in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Common Law)**
**Against All Defendants**

80.   Plaintiffs' incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

81.   Defendants unjustly received benefits at the expense of the Real MetaQuotes through Defendants wrongful and infringing conduct, as alleged further above.  Defendants continue to unjustly retain these benefits at the expense of the Real MetaQuotes.  The unjust receipt of the benefits obtained by Defendants lacks any adequate legal basis and thus cannot conscientiously be retained by Defendants.  Therefore, the circumstances of the receipt and retention of such benefits are such that, as between the Real MetaQuotes and Defendants, it is unjust for Defendants to retain any such benefits.  Equity requires that Defendants' not be allowed to retain their ill-gotten gains.

82.     The Real MetaQuotes is therefore entitled to full restitution of all amounts and/or other benefits in which Defendants have been unjustly enriched at the Real MetaQuotes' expense, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs' respectfully pray for the following relief:

A.     For entry of judgment in favor of Plaintiffs, and against Defendants, on each of the claims for relief alleged in this Complaint;

B.     For a preliminary and permanent injunction restraining Defendants; their officers, agents, servants, employees, attorneys, and affiliated companies; assigns and successors in interest; and those persons in active concert or participation with them, from:

     i.     selling, offering for sale, marketing, advertising, or trafficking in any products or services not authorized by Plaintiffs and bearing unauthorized uses of the Plaintiffs' marks which are likely to cause confusion, or bearing a design that is of a substantially similar appearance to Plaintiff marks listed in this Complaint;

     ii.     passing off, inducing, or enabling others to sell or pass off themselves as employees, agents, or authorize authorized individuals or entities with any affiliation or connection to Plaintiffs in any way;

     iii.     committing any act calculated to cause clients to believe that products and services offered by Defendants are those sold under the control and supervision of Plaintiffs, or are sponsored, approved, or guaranteed by Plaintiffs, or are connected with and produced under the control or supervision of Plaintiffs; and

///
///
///

iv.    continuing to use Plaintiffs' METAQUOTES Trademarks in connection with Defendants' purported registration with the California Secretary of State though changing the name used to register the infringing company on the Secretary of State's registry, or de-registering the company from the Secretary of State's registry altogether.

C.    For a determination that Defendants' acts of trademark infringement constitute cases of willful infringement;

D.    For actual damages as a result of Defendants' unlawful conduct, alleged above, as well as any profits that are attributable to the alleged conduct and are not taken into account in computing Plaintiffs' actual damages;

E.    For maximum statutory damages available under the law to the extent Plaintiffs elect statutory damages for any claim for relief;

F.    For punitive damages to the fullest extent available under the law;

G.    For reasonable attorneys' fees to the fullest extent available under the law;

H.    For treble and/or enhanced damages to the fullest extent available under the law;

I.    For full restitution, including restoration of all property unlawfully taken from Plaintiffs, as well as any ill-gotten gains from the unauthorized use of the Real MetaQuotes' trademarks;

J.    For prejudgment interest and the costs of prosecuting these claims to the fullest extent available under the law;

///
///
///
///
///

K.      For any additional injunctive, specific performance, and/or other provisional remedies, as appropriate; and,

L.      For such other and further relief as the Court deems just and proper.

DATED: March 28, 2022            McMANIS FAULKNER

_/s/ Matthew Schechter_
PATRICK HAMMON
MATTHEW SCHECHTER
ANDREW PARKHURST

Attorneys for Plaintiffs,
METAQUOTES LTD. and
METAQUOTES SOFTWARE CORP.


## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiffs, MetaQuotes Ltd. and MetaQuotes Software Corp., hereby demand a trial by jury in this action as to all issues and causes of action so triable.

DATED:  March 28, 2022            McMANIS FAULKNER

_/s/ Matthew Schechter_
PATRICK HAMMON
MATTHEW SCHECHTER
ANDREW PARKHURST

Attorneys for Plaintiffs,
METAQUOTES LTD. and
METAQUOTES SOFTWARE CORP.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF;  Case No.: