David J. Williams (CA State Bar No. 236919)
   E-Mail: dwilliams@mabr.com
Quincy Chuck (CA State Bar No. 307857)
   E-Mail: qchuck@mabr.com
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone: (949) 202-1900
Facsimile: (949) 453-1104

Attorneys for Defendant Jian He

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METAQUOTES LTD., a Republic of Cyprus limited corporation, and METAQUOTES SOFTWARE CORP., a Commonwealth of the Bahamas corporation,<br><br>      Plaintiffs,<br><br>    v.<br><br>METAQUOTES SOFTWARE CORP., A California corporation, STANDARD FINTECH CONSULTING, INC., a California corporation, FXCA MARKETS LIMITED, a dissolved California corporation, PEIJIE LIU, an individual, and JIAN HE, an individual, and DOES 1-20, INCLUSIVE,<br><br>      Defendants. | Case No. 8:22-CV-00462-SB-DFM<br><br>**DECLARATION OF JIAN HE IN SUPPORT OF SURREPLY TO APPLICATION AND ORDER TO SHOW CAUSE AS TO WHY PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED AS AGAINST JIAN HE**<br><br>Date:         April 22, 2022<br>Time:        10:00 a.m.<br>Courtroom:  6C<br>Judge:        Hon. Stanley Blumenfeld, Jr.<br><br>Complaint Filed: March 28, 2022 |

**SURREPLY DECLARATION OF JIAN HE**

I, Jian He, declare as follows:

1. I am over eighteen years of age. I make this declaration based on my own personal knowledge and records to which I have access. While I do not understand English well, I affirm the contents of this declaration based on a translation I believe is true and accurate.

2. I understand that on April 5, 2022, Mr. Georgiades submitted a declaration alleging that FXCA California sent certain emails to Plaintiffs in July, 2021, that Plaintiffs' records show were sent from Limassol, Cyprus. I did not send those emails. I was not in Cyprus in July, 2021, and was sitting at home, in California, with my wife and children at the time that email was sent. I, in fact, have not left the United States since 2017. I can prove this because I am not a U.S. citizen, and the Department of Homeland Security keeps track of entry and exit records of every non-U.S. citizen by issuing an I-94 each time a non U.S. citizen enters the country. These I-94 records are public records and can be accessed on the Department of Homeland Security, U.S. Customs and Border Protection, website at the following URL https://i94.cbp.dhs.gov/I94/#/history-search which keeps track of the Travel History of every non U.S. citizen. On April 6, 2022, I logged on to the Department of Homeland Security website and searched for my Travel History. Attached as **Exhibit 1** is a true and correct copy of my I-94 Travel History from the Department of Homeland Security website confirming that my "Most Recent Date of Entry" was August 22, 2017. The same information from this screenshot can be used by anyone to independently verify this on the same website.

3. My understanding is that Mr. Georgiades is providing Plaintiffs' records showing that allegedly infringing emails were sent from Limassol, Cyprus, to demonstrate that they came from FXCA California, and not from Mr. Suzu with FXCA Hong Kong who sent some later emails in Taiwan. I note that I do not know whether Mr. Suzu travelled between Cyprus and Hong Kong, but, as I stated in my previous declaration, my understanding and belief, based on SFC's records, and FXCA California's *actual* publicly filed Articles of Incorporation, Mr. Suzu is the incorporator

1
**SURREPLY DECLARATION OF JIAN HE**

1  of FXCA California. (See He Decl., Ex. D). In response to Plaintiffs' arguments, I
2  provide the following.

3      4.    <u>First</u>, as I explained before, the company I worked for, SFC, was contracted
4  by Wen Peng Li who explained that he was working with Mr. Suzu and Peijie Liu, and
5  FXCA California and Metaquotes California and that these companies were to be formed
6  on their behalf. My belief and understanding that this was the case is further supported
7  because I received proof of identity before proceeding. In fact, Mr. Li sent me Mr.
8  Suzu's passport *and* Peijie Liu's passport, in June 2021, as proof of identity and that they
9  consented to SFC helping to form these companies. Attached as **Exhibit 2** is a true and
10 correct copy of Mr. Suzu's passport. Attached as **Exhibit 3** is a true and correct copy of
11 Mr. Liu's passport. I understand that Mr. Suzu submitted a declaration disputing that he
12 approved of the creation of these companies. However, I note from the Court that from
13 my perspective, I performed due diligence at the time by receiving confirmation, by way
14 of receipt of a copy of Mr. Suzu's passport, for identification.

15     5.    <u>Second</u>, I understand that based on these new documents, Plaintiffs are
16 arguing that Li Wenpeng does not own Metaquotes California and FXCA California. In
17 this declaration, I further provide true and correct copies of Metaquotes California and
18 FXCA California's stock certificates, showing that Li Wenpeng is the 100% owner of
19 these companies. True and correct copies of Metaquotes California's stock certificate
20 covering all shares is attached hereto as **Exhibit 4.** True and correct copies of FXCA
21 California's stock certificate covering all shares is attached hereto as **Exhibit 5.** To my
22 recollection, in or around the end of July 2021, Li Wenpeng directed a colleague, Mr. Li,
23 to pick the stock certificates up from SFC's offices in person, which I understand were
24 sent to Li Wenpeng, who signed these in person and forwarded the attached true and
25 correct copies to SFC for SFC's records.

26     6.    I also understand that Mr. Georgiades' attached as Exhibit C to his Reply
27 declaration, a print out of a web page located at https://cns.stdfintech.com/about/ that he
28 purported to be from a website for a company called Standard Fintech Consulting, Inc. I

**SURREPLY DECLARATION OF JIAN HE**

note that this website appears to be for a company based in Hong Kong which, has the same name as the California Standard Fintech Consulting, which employed me, but is a completely unrelated company.

7. I understand that in Mr. Georgiades' declaration in paragraph 22, he alleged that "The Secretary of States' registration information regarding the counterfeit MetaQuotes indicates that it was founded by Jian He. Mr. He has been involved in pirating the Company's software since at least 2015." For the record, my understanding is that both allegations are false. I helped form Metaquotes California in the performance of my duties for SFC, but the company (supported by public records) was founded by Li Wenpeng and Liu Peijie. I also have never pirated Plaintiffs' software. I have no background or abilities in computers, and I have no idea how to pirate or hack software or any other items on a computer. My education background is to be a middle school Geography teacher. This declared to statement by Mr. Georgiades to support the TRO was incorrect. It is believed that Mr. Georgiades has no personal knowledge as to these statements—despite basing the request for the TRO on them.

8. I understand that Mr. Georgiades' declaration at paragraph 22 averred that "Mr. He was specifically involved in hacking MetaQuotes' technology and then fraudulently reselling it to companies in China." For the record, my understanding is that this allegation is false – I have never hacked Metaquotes' technology or fraudulently resold it to companies (in China or elsewhere). As addressed, my education background is as a middle school Geography teacher and I do not even know how to hack anything. This declared to statement by Mr. Georgiades to support the TRO was incorrect. It is believed that Mr. Georgiades has no personal knowledge as to these statements either—despite basing the request for the TRO on them.

9. I understand that Mr. Georgiades' declaration at paragraph 22 averred that "Upon discovery Mr. He's unlawful conduct, MetaQuotes worked with Chinese Law enforcement in a concerted effort that culminated in his arrest. My understanding is that Mr. He never served any jail time in China, as he fled the country by going to Hong Kong

**SURREPLY DECLARATION OF JIAN HE**

and then the United States. My understanding is that Mr. He is now considered a fugitive by the police in Hebei Province, China." My understanding is that this is false. I have never been arrested (in China and otherwise). I did not go to Hong Kong prior to coming to the United States. It is true that I have never served any jail time in China, but that is because I have never ever been arrested! I am not aware of being a "fugitive" and it is believed that Mr. Georgiades has no personal knowledge as to these statements either— despite basing the request for the TRO on them.

10. In Mr. Georgiades' Reply declaration, at Exhibit D, he attached an email, allegedly from a Chinese patent attorney, from February, 2018, which mentions a company called Qingdao Create. This company was not mentioned in Mr. Georgiades' early declaration. I *was* one of the shareholders of Qingdao Create, but did not actively manage that company. In 2016, I sold all of my shares in that company, and my understanding is that the new owner merged Qingdao Create with Qingdao Sitong (and Qingdao Sitong was the company actually mentioned in the document attached to Mr. Georgiades' first declaration). However, I was not involved with any of the actions of Qingdao Create after I divested myself of ownership in 2016 (and have never been involved with Qingdao Sitong at all). Presumably, my name cropped up early on in relation to the Chinese case against Qingdao Sitong for that reason. However, I assume that the Chinese authorities probably quickly figured out that I was only an early shareholder in Qingdao Create (a different company) and had sold my shares before any of the events at issue took place, which may be why I never heard that anyone was looking for me. I have also since spoken to some of the individuals mentioned in Mr. Georgiades' Reply Declaration, at Exhibit D, and was informed that they appealed their case and were released.

11. In Mr. Georgiades' Reply Declaration, paragraph 2, he avers that I was an "owner or director of UGL" which was a client of Plaintiffs. Mr. Georgiades' averred that "Jian He, during the three years that UGL was a client, was able to gain experience and knowledge into Plaintiffs' client operations, including its billing procedures,

**SURREPLY DECLARATION OF JIAN HE**

invoicing and payment processes, and ordering and technical support websites." I was one of the shareholders of UGL. However, I did not have any role in managing the company. UGL had an independent CEO and was governed by an independent board of directors. I did not have any managing role in the company and while, as a shareholder, I was nominally a director, I was strictly not one of the managing directors (to preserve the independence of the board). I understand that Plaintiffs have over 100,000 customers and is the most popular foreign exchange trading software, so I am not surprised that the CEO of UGL may have selected Metaquotes software to use. From Plaintiffs' declarations, it appears that almost every financial institution is a customer of Plaintiffs in some form. However, I had no control over what software UGL used (and my understanding is that UGL paid over $200,000 to Plaintiffs for the software). My understanding is that Mr. Georgiades' averment that "UGL was engaged in fraudulent activity" is false. My understanding is that UGL went out of business in 2020 simply because the company ran out of funds.

12. I understand that Mr. Georgiades' declaration, at paragraph 24, averred that "Mr. He has not stopped his efforts to steal money from MetaQuotes. Specifically, the Company has learned that Mr. He has posed as a Company representative, sent a fake license agreement and invoices to a real customer of the Company, and collected substantial sums of money that should have been paid to the Company." These averments are false. I have never stolen, nor tried to steal money from MetaQuotes and did not do any of those alleged acts. It is believed that Mr. Georgiades likewise does not have such personal knowledge, despite declaring such to support the TRO request.

13. I understand that Mr. Georgiades' declaration, at paragraph 25, averred that "I understand that Mr. He incorporated the counterfeit MetaQuotes to further his efforts to steal money, customers, to both from the Company by sending additional fake invoices." These averments are false. I only assisted with the formation of Metaquotes California as part of my job duties for SFC for Peijie Liu and WenPeng Li—who were the incorporators of Metaquotes California, and I did not do any of the alleged actions. It

**SURREPLY DECLARATION OF JIAN HE**

is believed that Mr. Georgiades likewise does not have such personal knowledge, despite declaring such to support the TRO request.

14. I understand that Mr. Georgiades' declaration, at paragraph 30, averred that "Mr. He-under the guise of the Counterfeit MetaQuotes-sent false invoices to the Real FXCA directing it to make payments . . . Mr. He, using a U.S. bank account belonging to the Fake FXCA, would send $60,000 back to the Real MetaQuotes . . . Mr. He would then keep the difference . . . The banks where all of these accounts were opened however, had no knowledge or involvement in Mr. He's scheme." These averments are false. I did not do any of these alleged actions. I do not know if others engaged in these acts, but I did not. It is believed that Mr. Georgiades likewise does not have such personal knowledge as to my involvemnet, despite declaring such to support the TRO request.

I declare under penalty of perjury under the laws of California that the foregoing in true and correct.

Executed this 14th day of April, 2022.

By: _____
Jian He